## Kirk *versus* Hartman & Co.

| 63 | 97 |
| 126 | 176 |

| 63 | 97 |
| 21 SC | ⁴476 |

1. In a suit against two as partners on contract, the question would be whether they were partners in that contract. Whether they were general partners is immaterial.

2. By a written contract, Kirk agreed with Hartman to act " as agent or salesman for stock of (a company) stone coal and coke and to travel," &c., Hartman " to pay him $3000 in equal quarterly payments" and his travelling expenses, and to allow him to take orders from others, &c. *Held,* that this was a hiring for a year.

3. When one is employed as an agent, &c., for no definite time, it is a hiring at the will of both parties, and he may be discharged without notice.

4. If one holds himself out or knowingly suffers himself to be held out, as a partner, on the faith of which others trust or enter into a contract with the firm, he is responsible, although not a partner.

5. Estoppels shut the mouth of a party, whether his original act or declaration was intended to deceive or not.

6. Evidence of declarations of a party to a written contract at an indefinite time prior to it, is not admissible to introduce a new term into the contract.

7. Evidence that other agents in similar business at the same places did much more business than the plaintiff, is not admissible to prove his negligence or default.

8. Debt will lie on a contract for service for a determinate time and fixed compensation, when the servant is dismissed before its expiration.

9. In a suit on a contract of hiring by a servant discharged before his term, his being engaged in other profitable business or refusing it if offered, may be shown by the defendant (on whom is the burden) in mitigation of damages.

10. Debt lies on any contract in which the certainty of the sum or duty appears.

13 P. F. SMITH—7

[Kirk *v.* Hartman.]

November 2d 1869.　Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county:* No. 8, to October and November Term 1869.

In the court below, on the 30th of December 1867, John Kirk brought an action of debt against S. H. Hartman and James M. Bailey, partners as S. H. Hartman & Co.　The plaintiff resided in Chicago.　He declared on an agreement under seal November 19th 1866 (which he set out *totidem verbis*), by which it was agreed that he should act as agent or salesman for stock of the Pittsburg and Connellsville Mining and Manufacturing Company, stone-coal and coke, &c. : the defendants to pay his expenses when out of Chicago, and " $3000 in equal quarterly payments." He averred that he entered upon the duties and continued to perform them till May 8th 1867, when the defendants, against his consent, discharged him; that he was at all times ready and willing to discharge his duties under the agreement; and further averred their liability to pay him three quarterly payments of $750 each, and $250 for travelling expenses.　The declaration contained a general count for work and labor.

The defendants pleaded, " *non est factum,* never indebted, no partnership, want of consideration, failure of consideration, rescission of contract:" also, specially, that at and before the execution of the contract, the plaintiff falsely represented that he could sell the stock in a short time, and if he should fail in selling, his services should not cost the company anything, and by reason thereof the defendants were induced to enter into the agreement.

The plaintiff on the trial before Stowe, J., gave in evidence the agreement as follows—the signature " S. H. Hartman & Co." being admitted to be in the handwriting of S. H. Hartman :—

" Pittsburg, November 19th 1866.

" Memorandum of agreement made this day between John Kirk, of Chicago, Illinois, and S. H. Hartman & Co., of the city of Pittsburg, witnesseth as follows : The said Kirk agrees to act as agent or salesman for stock of the Pittsburg and Connellsville Mining and Manufacturing Company, stone coal and coke, and to travel, if said company should desire it, not to exceed four months in the year, and when out of Chicago the party of the second part to pay all travelling expenses, but when at home, in Chicago, to board himself; and for Kirk's services we agree to pay him three thousand dollars in equal quarterly payments, and to allow Kirk the privilege of taking orders for other parties for goods not interfering with the interest of the said S. H. Hartman & Co.

" In witness whereof we have hereunto interchangeably set our hands and seals.

　　　　　　　　　　JOHN KIRK, 　　　　[SEAL.]
　　　　　　　　　　S. H. HARTMAN & Co., [SEAL.]"

[Kirk v. Hartman.]

Also, the following letters, under objection and exception:—

"Sherman House, Chicago,
'September 27th 1866.

"John Kirk, Esq.    Dear Sir:—Mr. Hartman and I called this A. M. on Hall, Kimbach & Co., to whom we had letters, and they very kindly consented to permit us to refer any of your citizens to them.

"Below you will find the names of some of our subscribers, who reside in our city.

"W. E. Schmertz, &c.

"There are others, but they are probably not so well known or so easily referred to as the above.    There is already subscribed in our city over $225,000.    We leave with your son a subscription book, which you can use when obtaining subscriptions.    We intend organizing the company the coming month, at which time the first instalment will be called in and the balance will be called for as fast as it is required to be expended in the erection of the works.    When we called on Mr. Hall we found him too unwell to talk over the matter, but Mr. Hartman thinks that you will be able to sell H., K. & Co. some $40,000 or $50,000 of the stock.

"Hoping to hear from you soon,
"I remain, very truly yours,

JAMES M. BAILEY."

"Pittsburg, January 12th 1867.

"Mr. John Kirk:—Enclosed you will please find all the copies yet ready of the charter, and statement of P. & C. M. & M. Co. The statement may not be such as you wished for, and if not, please state what alterations or additions may be necessary.    Our Mr. H. thought, from examining the one of Mr. Moore's that you enclosed him, that the present one might answer. *  *  We will give the order for coal our best efforts, as far as fit, as well as quality is concerned.    I think there is no doubt of its answering fully.

"We hope that you may succeed in inducing others to make the trial.    Our steel company is in a flourishing condition; think will be able to organize next week.    Send word where to send you the balance of the printed copies of charter and statement. Mr. H. says he hopes that you will keep stirring up the monkeys.'

"Yours respectfully,
S. H. HARTMAN & Co., by Bailey."

"Pittsburg, March 16th 1867.

"John Kirk, Esq.    Dear Sir:—Your friend Mr. Bogle called on Mr. Bailey before I returned, and made arrangements to go to Connellsville with some of us.    Yesterday he called on me, stating that he had difficulty in getting cars to ship his coal in,

therefore he would have to put it off till next week. If he can spare the time to spend a few days in the coal region, I hope he will remain long enough to see what we have in that rich country. I am much pleased with him. Be good enough to let me know what he's worth (and how he stands as a merchant).

"Yours truly,

S. H. HARTMAN."

"No. 70 St. Johns Place, Chicago, March 25th 1867.

"Messrs. S. H. Hartman & Co. Gentlemen:—I am in receipt of your favor of the 21st inst. * * * I expect to leave in the morning for Milwaukee, and on my return leave for Saint Louis, stopping on my way thither at Joliet, &c. Whichever route do you think will be most advisable to take first? I do not intend to stop until I go every place you think it advisable to go to.

"I am obliged to you for any suggestions you may make in the way of inducing merchants to subscribe. But the one you mention in your note of the 21st I have repeatedly made.

"I think it would be well for you to send me a complete list of all your stockholders, and the amount of stock subscribed by each, as it might be more satisfactory. Mr. Bailey wrote me that you had been very successful in getting stock taken lately. * * *

"Very respectfully, your friend,

JOHN KIRK."

"Pittsburg, March 26th 1867.

"Friend Kirk. Dear Sir:—Your favor of the 25th inst. is received.

"I think you would do well to confine yourself to the large places, Chicago, Quincy, St. Louis, Alton, and not have more than one or two subscribers in each town, from twenty to thirty thousand dollars. I can see no objections to your selling coal and coke. Mr. Bailey has the subscription, and when he comes home I will call attention to it.

"Very respectfully,

S. H. HARTMAN."

"Pittsburg, Pa., April 9th 1867.

"John Kirk, Esq. Dear Sir:—Yours of the 2d inst. has been received. We will reply to Mr. Ridgeley's request as soon as we can arrange rates with the R. R. Co. After carefully considering the closing part of your letter, and taking the general tenor of your former ones, we have concluded that for *the present* you had better discontinue any further efforts to obtain subscriptions to the stock of the P. & C. M. & M. Co. Your entire want of success has convinced us that your remarks 'that no human agency could convince the people of the real merits of the undertaking,' is perfectly correct. We would, therefore, with your consent, prefer to

[Kirk *v.* Hartman.]

close the contract with you for the present, and wait for a more favorable time for you to operate upon the feelings of the citizens of the West. Feeling certain that from your well known abilities, you could readily command a better salary from other parties, we feel satisfied that such a course would occasion you no inconvenience, and would rather be a relief from an unpleasant duty than otherwise. If this course meets with your approval, you will please send a detailed statement of your account, so that we can close it.

"Yours respectfully,

S. H. HARTMAN & Co."

(The foregoing is in the handwriting of Bailey.)

"No. 70 St. Johns Place, Chicago, April 15th 1867.

"Messrs. S. H. Hartman & Co. Gentlemen  *  *  *  On reaching home, I received Mr. Bailey's letter of the 9th inst., the reading of which amused me a good deal. Mr. B. writes a good letter, but he compliments me too highly. I am very sorry that I cannot consistently annul our contract until the year expires. You will recollect that I did not want to engage with you until you got your mill into operation, and had it not been for the promise of giving the western agency to me when the mill started, I should not have hired with you at all. But still, if I could get another situation equally as good, I should have no objections to accommodating you, but I do not like to run any risks.  *  *  I have no idea of leaving you, unless I can better myself (with your consent) to work for another firm, until my year expires.  *  *

"Again, I understood that you were to open a coal and coke yard here in Chicago, that I was to attend to; but if you have concluded not to do so, if you can sub-let me to some other Pittsburg coal firm, I will sell coal for them, but will hold on to you for my quarterly salary. Another thing, I have a house rented, that I will have to pay a year's rent for, unless I can rent it when my time expires with you.

"I am aware that the way things look now, business being so extremely dull in all departments, I have no idea that I could get anything to do. But still, I will look round, and see if anything can be done, and if a favorable opening offers, I will write you.

"Very respectfully, your friend,    JOHN KIRK."

"No. 70 St. Johns Place, Chicago, April 29th 1867.

"Messrs. S. H. Hartman & Co. Gentlemen  *  *  I regret that there should be any misunderstanding between us in relation to our contract, for it seems to me to be so plain (to use the language of one of the ancient prophets), that ' the wayfaring men, though fools, shall not err therein.' I have nothing to add to the closing part of my letter to you of the 15th inst.

[Kirk *v.* Hartman.]

" I then stated to you that you might sub-let me to some other coal company.  Perhaps you might make a satisfactory arrangement for me to do something for the Jones & Nimick Mf'g Co. to sell their goods, or with Lorenz & Wightman, to sell their glass.

" I have been looking round through the city here for something to do, but have not succeeded.  One of the coal-yard owners said if business revived, he might, perhaps, have something for me to do.  Very truly, you friend,

"John Kirk."

"Pittsburg, May 8th 1857.

" John Kirk, Esq.  Dear Sir :—Yours of April 29th was received.  We regret very much that you still persist in treating the matter of our contract in the manner you do.  *All* contracts are liable to different explanations and constructions, and we feel perfectly able to sustain our position, even (to use your language) to 'wayfaring men, though fools.'  Now we feel that the position you have taken is one that will neither bring profit to you, nor honor to any one who desires a reputation for honesty or fair dealing.  We propose to close your engagement with us, simply because you have done us no service, and state in your letters that you *cannot* do us any.  If you have not already understood from our former letters that we did not wish you to attend to any business for us, we wish to state now that such is our desire, and we hope that you will make a note of it, so as to save you any further trouble or expense on our account.  We wish to settle our matters in a spirit of fairness and justice, and if you feel inclined the same way, we don't think there should be any trouble between us.  If you desire us to try to make any arrangements with other parties to employ you, will do so with pleasure any time.

" Yours respectfully,        S. H. Hartman & Co.

Per B."

(The foregoing letter is in the handwriting of Bailey.)

There were many other letters read, which it is not necessary to insert : all being admitted under objection and exception.

The plaintiff gave in evidence also his account for travelling expenses, on which there appeared to be due him a balance of $21.09.

He gave evidence of services under the contract.

The plaintiff having closed, the defendants offered to prove by D. R. Davidson, conversations between the plaintiff and Hartman during the progress of the negotiation to show misrepresentations by the plaintiff which led to the contract being made, &c.  The offer was admitted against the plaintiff's objection, and the witness testified : " Kirk said, 'I can sell all your stock without any trouble, but you must pay me well.'  This conversation was in November, but I cannot tell the time; they were talking

about making the contract; they were talking about it all the time I was with them, a portion of two days; it was before the middle of November." Defendants then offered to prove that "in connection with the statement of plaintiff, that he could ' sell all your stock easily,' the plaintiff stated that if he should fail in selling the stock, it should not cost the company anything."

The offer was objected to by the plaintiff, rejected by the court, and a bill of exceptions sealed.

The defendants offered to prove that during the period of service between November 26th 1866, and May 8th 1867, a large trade was carried on, through agents, in stone-coal and coke between Pittsburg, Springfield, &c., and other places in the West, which the plaintiff visited during that period, and charged expenses to the defendants therefor, to be followed by evidence that plaintiff sent orders during the whole period named for but six or eight car-loads of coke, being a very small amount compared with the actual sales effected through agents at those points: for the purpose of showing negligence and default on the part of the plaintiff, under his contract, and justifying his discharge. The offer was objected to, rejected, and a bill of exceptions sealed.

The plaintiff submitted this point:—

" If Mr. Bailey induced plaintiff to believe that he was the partner of Hartman in this transaction, before the contract was made, he is now estopped from denying the partnership." The court answered :—

" This we affirm, if you should find the facts to be so."

" 1. The plaintiff having failed to prove a partnership, as averred, between defendants, cannot recover in this action.

" 2. Under the pleadings and evidence in this cause, the plaintiff cannot recover.

" 3. It appearing from the evidence that the signature and seal to said agreement of the name ' S. H. Hartman & Co.,' is in the handwriting of S. H. Hartman, one of the defendants, and the plaintiff not having proven that the same was executed in the presence of James M. Bailey, the other defendant, or that the said Bailey has subsequently ratified or accepted the same, the plaintiff cannot recover in this action.

" 6. The evidence offered by the plaintiff to prove partnership between these defendants cannot be used in argument, or be considered by the jury to establish a ratification or adoption of the sealed instrument, by the defendants not signing it.

" 7. The contract offered in evidence is not for any definite period of time, and the principals had the right to terminate it at any time, and to discharge the plaintiff from their service, without notice.

" 8. The sale of stock was a material part of the contract, and if plaintiff wrote to defendants that he had utterly failed to sell

[Kirk *v*. Hartman.]

any of said stock, then such failure would warrant the defendants in discharging the plaintiff.

" 9. If the jury believed that the hiring was for an indefinite period of time, their verdict must be for the defendants."

The court denied the foregoing points from the 1st to the 8th inclusive, and in answer to the 9th said :—

" This is a matter for the court, and we instruct you as a matter of law that the contract was binding upon the parties for one year."

The jury found for the plaintiff $2430.87.

The defendants took out a writ of error. Their specifications of error were :—

1-7.   The answers to their points.

8.   The answer to the plaintiff's point.

9.   " Admitting the letters offered by plaintiff below."

10, 11.   Overruling the defendants' offers of evidence.

*S. Schoyer* and *J. H. Bailey*, for plaintiffs in error.—The plaintiff cannot recover in this form of action ; the services not having been performed, his claim is for damages : Donaldson *v*. Fuller, 3 S. & R. 505 ; Harris *v*. Liggett, 1 W. & S. 301 ; Algeo *v*. Algeo, 10 S. & R. 235 ; Stewart *v*. Walker, 2 Harris 293 ; 1 Chitty's Pl. 109, 118 ; 1 Par. on Cont. 412, 522, 528 ; Smith *v*. Hayward, 7 Ad. & El. 544 ; 2 Saunders on Plead. & Ev. 351, 352. The contract price is not the only measure of damages : Stewart *v*. Walker, 2 Harris 294. Whether the hiring was for a year was a question for the jury : Fereira *v*. Sayres, 5 W. & S. 214. Either could rescind the contract : Story on ₄Agency, § 462 ; Coffin *v*. Landis, 10 Wright 426. The representations ·of Kirk as inducing the contract were evidence to show failure of consideration : Falconer *v*. Smith, 6 Harris 130 ; 1 Sm. L. Cas. 273. There was no evidence that Bailey induced the defendants to believe that he was partner with Hartman ; it was error to submit the question : Sartwell *v*. Wilcox, 8 Harris 117 ; King *v*. Faber, 1 P. F. Smith 392.

*M. W. Acheson*, for defendant in error.—A servant hired for a fixed period and discharged without cause before, may recover for the whole time : 1 Pars. on Cont. 520, note ; King *v*. Steiren, 8 Wright 99. A certain sum was due here by express stipulation, and debt will lie : 1 Chitty's Pl. 108 ; Home *v*. Semple, 3 McLean 150 ; 2 Tr. & Haly by Fish 16 ; Montgomery *v*. St. Stephen's Church, 4 W. & S. 542; and the defendants could make any equitable defence : Light *v*. Stoever, Price *v*. Lewis, 5 Harris 51. The declarations to be proved by Davidson were not made contemporaneously with the contract : 1 Greenl. on Ev. § 275.

[Kirk *v.* Hartman.]

The opinion of the court was delivered, May 5th 1870, by

SHARSWOOD, J.—Whether the defendants below, Hartman and Bailey, were general partners in any kind of business did not appear, nor was it material. It would be sufficient to show that they were jointly concerned in the particular transaction in which the plaintiff Kirk was employed as agent or salesman. That was to form a company, to be called The Pittsburg and Connellsville Mining and Manufacturing Company, and to dispose of its stock, as well as to sell stone-coal and coke. That Bailey was a party to this scheme with Hartman can scarcely be questioned. His letter, dated September 27th 1866, alone is very persuasive evidence of it. He speaks of Mr. Hartman and himself having called on certain persons and obtained their consent "to permit us to refer any of your citizens to them." "We intend," he proceeds, "organizing the company the coming month, at which time the first instalment will be called in, and the balance will be called for as fast as it is required, to be expended in the erection of the works." It is to be noted that this letter is signed James M. Bailey, not S. H. Hartman & Co. per Bailey, as some of the other letters are, from which the inference is attempted to be drawn that *non constat* that he was not a mere clerk. So the letter of February 12th 1867, signed James M. Bailey, says: "Mr. S. H. H. has gone to Ky. to attend to some of our coal interests in that state." In all the correspondence, as far as it was conducted by him, he speaks the language of a principal; and the letters of April 9th and May 8th 1867, by which the plaintiff was dismissed from their employment, show plainly that he knew and had ratified the contract sued upon, which had been executed under seal by his associate Hartman. This disposes of the 1st, 3d and 4th assignments of error.

Nor is it less clear that no error was committed by the learned judge in instructing the jury that the contract sued upon was binding upon the parties for one year. When, indeed, a person is employed as an agent, traveller or salesman, for no definite time, the law does not imply a hiring by the year, but at the will of both parties, and the principal has a right to terminate it at any time, and to discharge the agent from his service without notice: Coffin *v.* Landis, 10 Wright 426. "No doubt," as it is said in that case, "there is a class of contracts for the employment of servants where the law presumes the contract to intend a yearly or monthly employment, though nothing is said of the duration of service. They are more numerous in England than in this country. They relate to contracts of hire of menial domestic and husbandry servants." That was an employment to sell land, as this was to sell stock. But the written agreement in this case by fair intendment or construction of its language, is for one year, although it does not expressly so provide.

[Kirk *v.* Hartman.]

"For Kirk's services we agree to pay him three thousand dollars in equal quarterly payments." According to the lexicographers, "quarterly" is the same as "quarter-yearly," and means "once in a quarter of the year." Such, too, is the received popular sense of it, which we are bound to notice and regard. He was to be paid a fixed sum, and if it was for no fixed time, as, for example, for his entire services when all the stock was sold, how could it possibly be made in quarterly payments, even supposing that word to signify simply a division into four parts? This disposes of the 5th and 7th assignments.

The 8th error assigned is to the instruction "that if Mr. Bailey induced plaintiff to believe that he was the partner of Hartman in this transaction, he is now estopped from denying the partnership." Nothing certainly is more firmly established than that if a man holds himself out, or knowingly suffers himself to be held out as a partner, on the faith of which others trust or enter into contracts with the firm, he is responsible whether he is in point of fact interested as a partner or not: Collier on Partnership, § 86. It is not important for what reason the rule was established. It was, says Mr. Collier, "upon principles of general policy to prevent the frauds to which creditors would be liable if they were to suppose that they lent their money upon the apparent credit of three or four persons, when in fact they lent it only to two of them, to whom, without the others, they would have lent nothing." It may, however, very well stand upon the ground of estoppel. All estoppels shut the mouth of the party, because it would be a fraud in him to speak, whether his original act or declaration was intended to deceive or not.

The 9th error is not properly assigned according to Rule VIII., 6 Harris 578, and we must treat it as none.

The 10th assignment is to the rejection of the offer to prove that in connection with the statement of plaintiff that he could "sell all your stock easily," the plaintiff stated that if he should fail in selling the stock it should not cost the company anything. It was not proposed to show that this was said at the time the contract was made, and that upon the faith of such assurance, it was executed as in Bollinger *v.* Eckert, 16 S. & R. 422, Rearich *v.* Swinehart, 1 Jones 233, and other cases of that class. It was a bald offer to introduce a new term into a written contract by parol evidence of a verbal declaration at some undefined time, without a pretence of fraud or mistake in the drawing of the contract. Of course the evidence was rightly rejected.

The 11th assignment is that the court below erred in overruling an offer to prove in substance that in comparison with other agents employed to sell stone-coal and coke in different Western towns, the plaintiff had effected but few sales: this for the pur-

[Kirk *v*. Hartman.]

pose of showing negligence and default on the part of the plaintiff under his contract, and justifying his discharge.

But it would be a very severe rule to apply, and justified by no principle of law, that comparative want of success in making sales by a traveller or salesman shall be evidence itself of negligence and misconduct. Yet upon that must the offer stand. It would have introduced a very extensive and embarrassing investigation as to the sales made by other agents, and would have been totally irrelevant to any question in issue in the cause.

This disposes of all the assignments of error except the 2d—that under the pleadings and evidence in this case, the plaintiff cannot recover. "If any specification embrace more than one point, or refer to more than one bill of exceptions, or raise more than one distinct question, it shall be considered a waiver of all the errors as alleged:" Rule VI., 6 Harris 578. It would seem, however, by the oral and printed arguments of the counsel for the plaintiffs, that the question intended to be raised by this assignment is whether where there is a contract of service for a definite period, and the servant is dismissed without cause before the expiration of the time, he can maintain debt for the stipulated wages or salary after the term has ended. That question must be considered as now settled in King *v*. Steiren, 8 Wright 99. It was there held that an employee for a determinate period, if improperly dismissed before the term of service has expired, is primâ facie entitled to recover the stipulated compensation for the whole time; and that if he was engaged in other profitable employment during the term, or such employment was offered to him and refused, the defendant, upon whom is the burden of proof, may show it in mitigation of damages. However it might be on a general count for work and labor done, the declaration here was special on the agreement, averring the discharge and the plaintiff's constant readiness to perform the agreement on his part. Now debt lies upon any contract in which the certainty of the sum or duty appears: Buller's Nisi Prius 167. If, as we have seen, the plaintiff primâ facie was entitled to recover the whole amount of the stipulated compensation, it answers all the conditions of the form of action, and cannot be affected by the fact that it is open to be reduced by evidence on the part of the defendant.

Judgment affirmed.