# C. R. STUCKSLAGER v. J. S. NEEL.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF ALLE-
GHENY COUNTY.

Argued October 23, 1888—Decided November 6, 1888.

(*a*) On the trial of an execution attachment, the plaintiff contended that, upon the evidence, property which the garnishee claimed to hold as collateral security was held under a sale at a fixed price, which sale, however, was fraudulent as to creditors.

1. The plaintiff not asking for specific instructions upon the aspect of a sale without collusion and of a claim by him for a balance due thereon, he could not complain of error in not submitting the cause to the jury in that point of view.

2. Moreover, the jury having found, under proper instructions, that the transfer to the garnishee was as a pledge to secure an actual indebtedness then existing, and without fraud, the want of such instructions, whether requested or not, was immaterial.

3. An entry of the transaction upon the judgment defendant's books, made as of an absolute sale, with a balance struck in defendant's favor, not being in the usual course of his business, was inadmissible against the garnishee.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 60 October Term 1888, Sup. Ct.; court below, No. 151 September Term 1886, C. P. No. 1.

On June 29, 1886, an execution attachment was issued upon a judgment of C. R. Stuckslager against William Kraft, at No. 43 June Term 1884, and J. S. Neel was served as garnishee. Issue.

At the trial on April 4, 1887, it appeared that in 1883–4 Kraft, a citizen and resident of West Virginia, was engaged in the coal and river transportation business on the Monongahela river, having an office in Pittsburgh, under the management of W. H. Moore who transacted all his business in this state. Moore, as the agent of Kraft, was filling a contract for the supply of coal to an iron mill, obtaining the coal from J. S. Neel, a coal operator on the Monongahela river. Mr. Neel was carrying Kraft's notes to the amount of $3,700, for coal

supplied, when about March 12, 1884, rumors reached him that Kraft had failed, and in a few days thereafter Moore, as the agent of Kraft, transferred to Neel fifteen coal flats.

J. S. Neel, the garnishee, called by the plaintiff as on cross-examination, testified in substance, that the flats had been transferred to him to hold as collateral security for the protection of the Kraft notes. At plaintiff's request he produced two bills of sale, both dated March 15, 1884, one of them for thirteen flats, with their marks and numbers, at $425 each, amounting to $5,525; the other, for two flats, with their marks and numbers, also at $425 each, amounting to $850. J. C. Thompson then testified that at the time of the transaction he was book-keeper in Mr. Moore's office; that on Saturday, March 15, 1884, he heard a conversation between Mr. Moore and Mr. Neel: "Neel said he would take all the flats up there and Moore would give him a bill of sale, and as soon as this thing would blow over he would pay the difference; he wanted his $3,700 secured; . . . . . in two or three months, he would settle with him and pay him the difference, any balance; turning round on his heel, he says: 'I want to show you, Moore, I want to help you along and hold these contracts; I will do what is right with you; if you can at any time raise the $3,700 to lift these notes, I will give you the flats back.'" The witness also testified that the price agreed upon for the flats was $425 each, and that on Monday following, Neel came into the office and told witness that he had collected the flats on Sunday, and that day or the next day the bills of sale were made out and carried to Mr. Neel, by the witness, and he had entered the transaction upon the books. An offer was then made:

Counsel for plaintiff, in connection with the bills of sale, proposes to offer in evidence the books of original entry of William Kraft, in view of the fact that Moore and Neel, by a collusive bargain, sold these flats and passed a bill of sale, and proposes to show that there was a regular entry made and a balance struck in the books of William Kraft showing the transfer.

Objected to as incompetent and irrelevant; that the books of William Kraft are not competent evidence against the defendant, the garnishee.

By the court: Objection sustained.[1]

W. H. Moore, called by plaintiff, testified that when the bills of sale were made out the price of the flats was fixed by Mr. Thompson, not agreed upon by him and Mr. Neel; that Mr. Neel said he did not want the flats but as security, and the flats were given him for that purpose. Testimony was also introduced from which it was claimed that the flats were worth about $500 each.

In his defence, Mr. Neel testified at length as to the transfer of the flats to him; that it was done as collateral security, and the bills of sale were taken because he thought that was the way to do it. It was then shown that Kraft, or Moore for him, had paid the interest on the notes to the bank holding them, until January, 1885, when Mr Neel paid and lifted them.

The court, BAILEY, J., charged the jury as follows:

The position of the plaintiff, as I understand it, is, that by collusion between Moore, the agent of Kraft, and Neel, the garnishee, certain property belonging to Kraft, consisting, I believe, of fifteen flats, was transferred to Neel for the purpose, not merely of paying Neel's claim against Kraft, which seems to have been $3,700, but for the purpose of delaying and defrauding creditors, covering up the property so that Kraft's creditors would be defrauded and prevented from making their money. That is the position taken by the plaintiff, that this was a fraudulent transaction. The burden is upon the plaintiff. There is no presumption of fraud; it is a matter to be proven, and it must be proven by the party who alleges it. It must be established here, not merely that Mr. Moore may have had some improper purpose in transferring these flats, but that Mr. Neel was a party to it, consenting and conniving with Moore, as the agent of Kraft, to cover up this property for the purpose of defrauding creditors.

I do not propose to go into the various questions that have been suggested, or the matters that were pressed upon your attention as determining these questions, but the main points upon which stress has been laid by plaintiff's counsel in attempting to establish this claim, are, first, as to the amount of property transferred, fifteen flats, which at $425 each would amount to something over $6,000; that that was so much in

excess of the $3,700, due by Kraft to Neel, that it involved in itself indications of some purpose other than an honest one. That is a question for you to determine under the facts. The mere transfer of an excess of property, is not necessarily a badge of fraud. It may have been for the purpose, as the defendant contends, of security and for no other purpose, and that the defendant, seeking to be secured, desired to get all the property he could which would make him secure, and in doing that he would be exercising a legal right. It is not necessary that he should take property just exactly to the dollar, of the amount he claims due to him and sufficient to pay his indebtedness, but he is at liberty to get what he can to secure him, provided he does it honestly and for the purpose of protecting himself and paying the indebtedness to him.

Another matter that is claimed by the plaintiff to show fraud, is the language ascribed to Mr. Neel by the witness, Mr. Thompson, that after this arrangement had been made Mr. Neel said to Mr. Moore, " You know I am disposed to help you and do what I can to assist you, and when this thing blows over I will pay you the difference between this $3,700 and the value of the flats." [Upon the subject of the value of the flats, that is a matter upon which the parties are not necessarily concluded by the $425, but this party plaintiff would be only entitled to recover, in any event, what the flats were actually worth, and that is a question of fact for you under all the evidence in the case.] [3]

Another alleged badge of fraud is the bills which were made for these flats and receipted by Mr. Moore ; that that was a transfer for the purpose of deceiving the creditors and therefore defrauding them out of their just rights. That may be so. It depends upon all the other circumstances. Standing alone it does not necessarily amount to evidence of fraud in itself. It is perfectly consistent with the position taken on the part of the defence, that it was merely a pledge of the property to secure Mr. Neel's claim against Mr. Kraft; but, of course, fraud can be ascertained, and must be ascertained, ordinarily, from all the circumstances surrounding the transaction. Taking into account matter which may be inconsiderable in itself, along with various other matters, it may become evidence for the jury to satisfy them that some fraud was intend-

ed, but, you will recollect, it must have been with the consent and connivance of Mr. Neel. The mere improper conduct on the part of Mr. Moore, or improper purpose on his part, would not be sufficient to show that the matter was for the purpose of defrauding creditors and therefore void.

On the other hand the explanation is that this property was transferred to Mr. Neel merely for the purpose of security, and to protect him against the two notes for $3,700, which were then maturing and upon which he was indorser and liable to the Tradesmen's National Bank, in which they had been negotiated. It is perfectly competent for the defendant to explain in that way, if you believe the facts as represented by him, the bills which were receipted by Mr. Moore for the fifteen flats. The fact that an absolute bill and receipt were rendered is not inconsistent with the explanation given by Mr. Neel; and it would be perfectly competent for any other party to protect himself, so far as there may have been any excess in the hands of Mr. Neel, belonging to Mr. Kraft, and subject to his debts by proper course. [It was perfectly competent for this plaintiff to issue an execution and sell the rights of Mr. Kraft in any excess in the hands of Mr. Neel. Then he would stand in the place of Mr. Kraft and be entitled to buy in the rights of Mr. Kraft to that excess, and when he did so he would stand in Mr. Kraft's place, and, by paying to Mr. Neel what Mr. Kraft owed him, he would be entitled to obtain the property or the value of the excess, if Mr. Neel refused to deliver the property to him.] [5]

So that [the question is, not whether Mr. Neel shall retain the entire amount of the value of these flats, without redress to anybody else, but whether sufficient has been shown here to satisfy you that the whole transaction was a contrivance and a scheme to cheat and defraud creditors. If you find there was such a scheme and connivance and this was not a mere transfer of property for the purpose of security, you will be at liberty to find for the plaintiff for the whole value you may ascertain the flats to be worth, because if the transaction is void at all it is void throughout and Mr. Neel is not entitled to retain anything.] [4] If it was a transfer, however, for the purpose of security merely, Mr. Neel has a right to hold on to the flats until he is reimbursed by somebody, either by Kraft

or by some of his creditors, in the mode in which I have indicated. When that is done the difference will be applied to the indebtedness of Mr. Kraft; and your verdict here, if you find that to be the state of fact, will be for the defendant.

The verdict of the jury was for the garnishee. A rule for a new trial having been discharged, judgment was entered upon the verdict, when the plaintiff took this writ, assigning as error:

1, 2. The refusal of plaintiff's offer.[1]

3–5. The parts of the charge embraced in [ ][3 to 5]

*Mr. W. C. Erskine*, for the plaintiff in error:

1. The plaintiff was the judgment creditor of Kraft. Kraft was defendant with Neel, the garnishee. The making of the bills of sale and the entry on the books being contemporary acts, surely it was competent for plaintiff to offer the books of Kraft, in connection with the bills of sale, for the purpose of enabling the jury to arrive at the intentions of the parties at the time: Laird v. Campbell, 100 Pa. 159; Corr v. Sellers, 100 Pa. 169; Noar v. Gill, 111 Pa. 488. The court will perceive from the evidence that the transaction bore all the badges of fraud, and that the transfer was made for the purpose of hindering, delaying and defrauding creditors. In this view, if in no other, the offer was competent.

2. The court erred, further, in instructing that the parties were not necessarily concluded by the price fixed for the flats, " but that plaintiff would be entitled to recover, in any event, only what the flats were actually worth." The evidence showed an unconditional sale. Bills of sale were passed and accepted, and surely the parties were concluded by their own act manifested in writing, the more especially when other creditors were concerned: Babb v. Clemson, 12 S. & R. 328.

3. The plaintiff was much prejudiced by the instruction that the jury, if they believed the transfer was a contrivance to defraud creditors, would be at liberty to find for the plaintiff for the whole value of the flats, because the transaction, if void, was void throughout. Plaintiff asked the jury to find merely for the amount due by Neel to Kraft over his claim of $3,700. The instructions led the jury to believe they could

find but one of two verdicts, one for the plaintiff for the full
value of the flats, or to accept the theory of the defendant
that the property was held merely as collateral.

*Mr. Edwin W. Smith* (with him *Mr. Phil. H. Knox* and
*Mr. Jas. R. Reed*), for the defendant in error:

1. The book-entry was not made in the regular course of
daily business: Shoemaker v. Kellog, 11 Pa. 310; Corr v.
Sellers, 100 Pa. 170.

2. If the transfer was a "scheme and contrivance," then,
undoubtedly, the plaintiff could have recovered the full value
of the flats. And even if the court erred in any portion of
the charge bearing upon the question of value or the amount
of recovery, it is immaterial, for the jury found that the trans-
fer was as security.

OPINION, MR. JUSTICE GREEN:

The plaintiff alleges that the main question was whether
there was a sale of the flats, and that he asked the jury to find
merely the difference between $3,700, the amount of Neel's
claim, and the selling price of the flats. So far as we can dis-
cover from the charge of the court and the statements and
arguments of counsel, the controversy seems to have been con-
ducted upon the proposition that the transfer of the flats was
a fraud upon Kraft's creditors. The chief subject of the
charge of the court was in relation to the allegation of fraud.
No points were submitted to the court by the counsel on either
side, and hence we cannot know whether the court was spe-
cifically asked to view the transaction in the aspect of a sale
without collusion, and a claim by the plaintiff for the balance
due upon such sale, and therefore the plaintiff is not in a posi-
tion to complain of error in the court for not submitting the
case in that point of view to the jury. In truth, it would
make little, if any, difference, whether that course was pursued
or not; because the court did, with entire fairness and correct-
ness, submit to the jury the question whether the transfer of
the flats was made for the purpose of hindering, delaying, and
defrauding creditors, or whether it was a bona fide pledge,
made for the legitimate and honest purpose of securing the
defendant Neel for an actual, true indebtedness due to him by
Kraft.

We do not doubt for a moment that such was the real character of the contest as it was conducted before the court and jury. The court distinctly told the jury, that if the transaction was a scheme to defraud creditors, it was void and they could render a verdict in favor of the plaintiff for the whole value of the flats; but if it was a transfer for the purpose of security merely, Neel had a right to retain the flats until he was reimbursed. Under this charge, whether the transfer was a sale or a pledge, if it was a fraud the plaintiff could recover, and as the jury has rendered a verdict in favor of Neel, they certainly found that it was not a fraud. An examination of the testimony satisfies us that the verdict was in accord with the preponderance of the evidence. That Neel had a perfectly honest and valid claim against Kraft for $3,700, is beyond all question. There is no evidence in the case which impeaches it in the slightest degree. If the plaintiff had desired the instruction of the court upon the effect of a lawful sale without fraud, he could easily have obtained it by presenting a point upon that subject, but he seems to have preferred the satisfaction of indulging in accusations of fraud, and of course he must abide by his position. Possibly he had a better chance of success in that way than in the other. It is immaterial, however, to consider this subject, since the jury has found, upon ample testimony, that the transaction was a lawful pledge, made without fraud, and the verdict concludes both the parties and the courts upon that question.

Error is also assigned to the rejection of an offer to give in evidence the entry of the transaction made by the bookkeeper upon Kraft's books. The purpose of the offer is thus expressed: "In view of the fact that Moore and Neel, by collusive bargain, sold these flats and passed a bill of sale." The only argument presented in support of the offer is that books of original entry are admissible to prove sales of merchandise. But it is apparent that the entry is not competent for that reason, because it was not a sale of merchandise at all, but a special transaction, a sale of fifteen river flats, the seller not being engaged in that kind of business. It would be just as competent to prove the sale of a house or any specific chattel by a book entry as to prove the sale of these flats in that manner. The rule is perfectly familiar, and is illustrated in the case of

Shoemaker v. Kellog, 11 Pa. 310, in which we held that books of original entry are not evidence of the casual sale of an article not in the course of the party's business, and of which it is usual to take other proof or evidence of sale. It was the sale of a mare regularly entered upon a tradesman's books, but excluded by the court below and sustained by this court. BELL J., said: "It is almost too trite to repeat that books of original entry are evidence only from necessity, and ought never to be received where the transaction from its nature admits of more satisfactory proof. They are receivable to show goods sold and put down in the course of the ordinary business or pursuit of the party offering them. . . . . But it would be dangerous to open the door of admission wider than this." See, also, Corr v. Sellers, 100 Pa. 169.

But there are still more cogent reasons why the entry was not admissible. It was secondary evidence only, and of a most inferior order at best. The person who made the entry was himself a witness in the cause, and testified on behalf of the plaintiff to his whole knowledge of the transaction. That testimony was competent and was primary. Its importance depended upon its character and the credibility of the witness. But its competency does not depend in the least degree upon the fact that he made a written entry or memorandum of the transaction at the time. He could testify directly and in person to any fact he entered on the books, and that testimony would be the original, primary, and, therefore, only legal evidence of the fact in question. Moreover, this particular transaction was evidenced by two bills of sale, and they are the proper written evidence of what it was. These were given in evidence, with the full testimony of all the parties, including the bookkeeper, in relation to them; and the bills of sale, with all the oral testimony affecting them, and the transaction itself, were before the court and jury, and were fully considered and passed upon by both. Independently of these considerations, the entry in the books of Kraft was not made by his direction, or with his knowledge or consent, and, therefore, it would afford no basis of inference as to his purpose, nor was it made in the presence, or with the knowledge or consent, or by the authority, of Neel, and therefore, it could afford no proof as to his purpose. It must also be remembered that this was

not an action for goods sold and delivered, by the seller against
the buyer, and the evidence of the entry was not needed in
support of such a claim.   On the contrary, the agent of the
seller who made the transfer in question, was examined as a
witness, and on behalf of the plaintiff, and he testified most
positively and emphatically that the transaction was a pledge
and not a sale.   In no point of view, therefore, was the book
entry competent evidence.

Judgment affirmed.

