William Hall, T. C. Hall and John H. Hall, partners, trading and doing business as Wm. Hall & Company, Appellants, *v.* T. B. Wood et al., doing business as the Chambersburg Woolen Company.

*Contract—Evidence—Nonsuit.*

Defendants, a partnership, entered into a contract in writing with H. & Co., which was as follows: "Bought of H. & Co., all the colored noils for the year 1887, at forty cents to be delivered monthly." Plaintiffs offered to prove that a deceased partner of the defendants who made the contract nad agreed that the words " all the colored noils for the year 1887 " meant all the noils manufactured by a particular mill. The court excluded this evidence. No other evidence to explain the contract was offered. Before the expiration of the year defendants notified plaintiffs that they did not need any more noils, and that they would not accept further deliveries. Plaintiffs brought suit for noils alleged to have been delivered or tendered to the defendants after the notice. *Held,* (1) that the declarations of the deceased partner were properly excluded; (2) that as the contract was ambiguous, and as there was no evidence to explain the ambiguity, plaintiffs had no cause of action, and were properly nonsuited.

*Contract—Future delivery—Evidence—Book of original entries.*

Where there is a special contract to deliver goods periodically in the future, the seller cannot prove deliveries by his books of original entry.

Argued March 7, 1898. Appeal, No. 129, Jan. T., 1897, by plaintiffs, from order of C. P. Franklin Co., Sept. T., 1893, No. 248, refusing to take off nonsuit. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Assumpsit for goods alleged to have been sold and delivered. Before STEWART, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was refusal to take off nonsuit.

*O. C. Bowers,* with him *W. U. Brewer,* for appellants.—The contention on the part of the appellants is that this is not such a special contract as precludes the subject-matter thereof, or the goods delivered thereunder, from being the proper subject of book entry: Cooper v. Morrel, 4 Yeates, 341 ; Laird v. Campbell, 100 Pa. 164 ; Bear v. Trexler, 3 W. N. C. 214.

*D. Watson Rowe*, with him *W. Rush Gillan*, *J. D. Ludwig* and *E. J. Bonbrake*, for appellees.—It is submitted that the charges in plaintiffs' books are not evidence of goods sold and delivered by the plaintiffs to the defendants: Laird v. Campbell, 100 Pa. 159; Lonergan v. Whitehead, 10 Watts, 249; Nickle v. Baldwin, 4 W. & S. 290; Corr v. Sellers, 100 Pa. 169, 171; Rheem v. Snodgrass, 2 Gr. 379; Eshelman v. Harnish, 76 Pa. 97; Rhoads v. Gaul, 4 Rawle, 404, 407; Stuckslager v. Neel, 123 Pa. 53, 61.

OPINION BY MR. JUSTICE DEAN, July 21, 1898:

The plaintiffs were merchants, dealers in wools, noils and material used in the manufacture of woolen goods, in Philadelphia. The defendants were manufacturers of woolens in Chambersburg, Pennsylvania. Plaintiffs had been furnishing to defendants materials for the manufacture of woolens in the year 1886, and in November of that year arranged with John Huber, the president of the company, to furnish colored noils for the year 1887.

The averment of contract is founded on this paper:

"CHAMBERSBURG, November 6, 1886.

"Bought of William Hall & Co., all the colored noils for the year 1887 at 40 cents to be delivered monthly.

"JOHN HUBER, Pres.
"WM. HALL & CO."

The plaintiffs received these noils from the mill monthly, during the first part of the year 1887; sometimes they were stored in their warehouse at Philadelphia, awaiting an order for shipment; and sometimes shipped to defendants immediately. Up to August 9, 1887, all that were shipped were received by defendants and paid for. On August 9, plaintiffs sent a bill or invoice of a shipment at that date, amounting to $843.75. On receipt of this bill, defendants replied, acknowledging it, with this request, "Please do not store any more for us until ordered to do so." To this, plaintiffs, on August 13, replied: "We will stop storing the noils as we have been doing, and forward them to you every month on their arrival. Shall we ship the lot that is here up?" To this, defendants, on August 18, replied: "Will you please send us statement of our account

for all unsettled bills, excluding the goods stored here and in the city, and store no more for us until further orders, as we have as many colored noils stored here as we can use until 1st of January." To this, plaintiffs replied, enclosing statement for those stored in Philadelphia and at Chambersburg, and requesting payment, and further stating the contract in this language : " In reference to the noils, would say, that in January last, acting under instructions of your late president, Mr. John Huber, we contracted for you with the maker of the noils, for what they made for this year, and as the contract has several months to run yet, we will have to bill the noils to you until contract expires."

The plaintiffs continued to store the noils for defendants, and forwarded to them bills for the same monthly as they were received, and charged them to defendants on their books, for the remainder of the year. Beginning with the bill of August 9, defendants refused to receive and pay for them. Thereupon plaintiffs brought suit. At the trial in the court below, plaintiffs offered their books of original entry as evidence to show the amount of noils sold and delivered to defendants, and dates of such delivery and sales. On objection by defendants, first, that the books were not evidence to show the sale and delivery of goods under a special contract, and second, were not evidence of themselves to show a storage of them for defendants, they were rejected, to which plaintiffs excepted.

The defendants were a partnership, composed of many members, several of whom were dead at the time of trial; John Huber, the president, with whom plaintiffs alleged much of the conversation had occurred with respect to the contract, had also died; as a result, some evidence offered by plaintiffs was excluded, leaving their case to rest mainly on the evidence of the alleged contract of November 6, 1886, with whatever interpretation, might inferentially have been argued, was put upon it by the parties themselves in their subsequent correspondence. On this evidence, on motion of defendants' counsel, the court nonsuited plaintiffs, and afterwards refusing to take off the nonsuit, we have this appeal with an assignment of eight errors, which may be reduced practically to two : 1. Did the court err in its opinion of the contract? 2. Did it err in rejecting as evidence plaintiffs' book of original entries ?

As to the contract, the court says : " However ambiguous it may be, there is nothing in the evidence which relieves it to any extent of its ambiguity ; nothing to carry it to the jury. As we read it, it is an undertaking on the part of the defendants, a company engaged in the manufacture of woolen fabrics, to pur-chase from the plaintiffs, who were dealers in materials, all the colored noils they would require in the course of their business as manufacturers during the year 1887, to be delivered in monthly instalments, at forty cents per pound. It has not been shown that the defendants failed in any respect to comply with their agreement, or that they failed to pay for any noils they received, or that they received any from any other source, or that they ever received from the plaintiffs any of the noils sued for in this action."

The plaintiffs contended that the contract on part of defend-ants was to take in, in the year 1887, all the noils constituting the output of the Asa Peck & Company mill of Providence, Rhode Island, not to exceed, however, the output of the year 1886, and if that output fell below the needs of defendants, then plaintiffs were to make up the quantity by purchases from other sources.

The defendants contended that they were to take only all the noils they might need for the year 1887, and this quantity they had taken. This was far less than the output of the mill named.

The written contract of November 6, 1886, is palpably ambigu-ous, as the court decided. No verdict could, with even proxi-mate certainty of the truth, be founded upon it alone. In fact, appellants' argument, in effect, conceded this, for it is sought, first, to supplement the contract by the testimony of John Hall, one of plaintiffs, that when Mr. Huber, president of de-fendant company, made the contract, it was the understanding and agreement that the words, " all the colored noils for the year 1887," meant all the noils manufactured by the Peck & Company mill. This testimony, on objection by defendant, was properly excluded, because Huber, the partner with whom it was alleged the agreement was made, was dead. Nor was there any other competent evidence tending to make certain the uncertainty of the written contract. A careful reading of the subsequent written correspondence throws no light on the

question ; it only shows that each party sought to put its own interpretation on the contract, so that the learned judge of the court below, when he held that there was nothing in the evidence which relieved the contract from its ambiguity, committed no error ; there was not enough in the contract and the evidence to support a verdict.

The next question is, did the court err in rejecting plaintiffs' book of original entries. It appeared from the books that after the refusal of defendants to receive consignments of noils, plaintiffs continued for the remainder of the year 1887 to store in warehouses the product of the Peck & Company mill and charge them in their books as for goods sold and delivered. In the absence of a special contract, the books would prima facie have been evidence of the sale and delivery of the goods, for the account is the ordinary formal charge, " Chambersburg Woolen Co.   Bought of Wm. Hall & Co."

The reasons given for excluding the books, are very concisely and clearly expressed by the court, thus : " This evidence is rejected, because the books at best are but secondary evidence, and are only admitted in the absence of the primary evidence because of necessity. In this case, a written contract of sale is in evidence, and the delivery of the subject-matter of the contract to the defendants cannot be proved by the books, but must be established by independent evidence. Secondly, the contract of sale is an express contract for the sale of an article not in existence at the time of the sale, but to be manufactured and made in the future. No property therein passed to the vendee until made or manufactured, and either actually delivered to the defendants or at least set aside to them and accepted by them, and therefore except upon proof of such acceptance it could not be the subject of book entry."

This ruling is sustained by all the authorities. The leading case in our state, Lonergan v. Whitehead, 10 W. 249, has been followed ever since it was decided. There, by a special contract, Whitehead undertook to deliver to Lonergan bottles at regular list of prices, at rate of four gross per day, to the value of $459.43. It was admitted that all had been delivered except ten gross. Whitehead offered in evidence his book of original entries to prove the delivery of all the bottles under the contract; the court below admitted it; this Court reversed the

judgment, saying: " The evidence is admitted from necessity; for, according to the usual mode of doing business, the sale and delivery, being cotemporaneous acts, commonly take place when no other persons are present, and are consequently susceptible of no other proof. But no case has been cited where such testimony has been admitted to prove a delivery of an article made in pursuance of a previous contract. Here the contract was in writing for the delivery of a quantity of bottles to the purchaser as they were manufactured, at different times and at distant periods, and the only question is whether the vendor performed the contract. The reasons on which the cases cited are ruled do not apply, for there is no necessity to resort to such proofs, and it is not according to the usual course of business. The delivery is a matter of notoriety, done through the agency of others, and therefore easily proved by disinterested witnesses. The carman or persons employed take, or ought to take, receipts, and when this precaution is neglected, the agent may be called to prove the delivery. It has never been supposed, when a contract is for the delivery of wheat or flour or any other article of this description, at a future time, that the common law proof of performance can be supplied by such testimony; it would be evidence of the most dangerous kind. . . . "

This was followed by Nickle v. Baldwin, 4 W. & S. 290, where there was a special contract for the delivery of saw logs. Defendant, to sustain a set-off, offered his book of original entries to show the value and quantity of logs delivered under the special contract; this Court says, expressly approving Lonergan v. Whitehead, supra, " By a special agreement of this kind, the transaction is taken out of the usual course of buying and selling, and the performance of it by one and the breach of it by the other are susceptible of proof by the usual kinds of evidence. No reason of necessity or convenience exists for resorting to this peculiar kind of evidence, whether it be to establish the quantity of the article furnished or any other ingredient in the party's case." These cases are followed by many others in an unbroken line, down to Stuckslager v. Neel, 123 Pa. 53. There is nothing in the facts to take this case out from the operation of the general rule. It was incumbent on the plaintiffs to prove the special contract which they alleged,

and on which they relied, and that they performed it, by other evidence than their own declarations on their books. In fact, such proof went to the length of explaining the meaning of the ambiguity in the contract by their own declarations, to which meaning there was no evidence that defendants assented.

The plaintiffs argue that even in this view of the law, there was enough evidence to go to the jury outside the contract, tending to show that defendants had accepted the invoice of storage of August 9, 1887, amounting to $843.75. Defendants' reply of August 13, to notice of having stored these goods, taken by itself, would bear plaintiffs' construction; but this letter was subject to explanation, and must be taken in connection with all the evidence in the case ; and that it was not the intention of defendants to accept and pay for the storage of that invoice is clearly evinced by their letter of August 22, in which they say : " The 15 bags which appear in your statement, dated August 9, please do not ship ; we do not need it, as we wrote you on 18th, as we had enough on hand to run us until January 1st, 1888." So, the question still comes back to the main one, what was defendants' liability on the ambiguous contract? The court below answered, none ; in which answer we concur.

The assignments of error are overruled and the judgment is affirmed.