Oswald Machinery Co. *v.* Farnsworth and Ebert.

Argued November 11, 1930.

Before Trexler,

508

P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*Abraham Marcu,* and with him *Edward Marcu* of *Marcu, Marcu and Marcu,* for appellant.—There was no partnership: Williamsport v. Williamsport Pass. Ry. Co., 203 Pa. 1; Burgan v. Cahoon, 1 Pennypacker 320.

*A. Allen Simon,* and with him *Levi & Mandel,* for appellee.—There was evidence to support the jury's finding that defendant held himself out as a partner and that plaintiff relied upon this representation in entering into contracts with the defendants: Bing v. Schmitt, 226 Pa. 622; Shafer v. Randolph, 99 Pa. 250; Kirk v. Hartman, 63 Pa. 97.

Opinion by Baldrige, J., February 27, 1931:

The plaintiff brought this action in assumpsit for a breach of contract against John Farnsworth and Carl Ebert, as former partners trading under the name of John Farnsworth Associated.

It appears from the evidence that a written contract was entered into on February 14, 1925, whereby the plaintiff was to manufacture punches, dies, tools, fixtures and 20,000 locks used in printing presses. The plaintiff received $1,288.33 on account, $1,090 of which was paid for the dies, etc., and the remaining sum

for the locks, which, admittedly, were delivered before the contract was annulled by Farnsworth in May, 1926. The sum claimed by the plaintiff is for locks in the process of manufacture, plus profit which would have been made if the contract had not been abrogated by the defendant, amounting to $607.12. The jury found a verdict in favor of the plaintiff in the sum of $844.11: This appeal of Ebert followed.

Under the appellant's statement of questions involved, two questions are raised for our consideration: (1) Was Carl Ebert liable as a partner in John Farnsworth Associated? (2) Were the books of original entry competent evidence to prove delivery of locks that were to be manufactured and delivered?

Oswald, president of the plaintiff company, testified that Farnsworth introduced Ebert to him as his partner, and said, "We are going to give you an order for this work." A written order was then produced showing the punches, dies, etc., they desired, and samples of locks as they were to be manufactured were submitted to Farnsworth and Ebert, which they approved. There was testimony that Ebert was present at the printing establishment of John Farnsworth Associated and receipted for some of the locks which were delivered. Furthermore, when the contract was entered into, February 14, 1925, Ebert gave his check to the plaintiff for $500, and on September 13, 1925, paid him an additional sum of $150. In the fall of 1925 when Oswald presented a bill for some of the delivered goods, Ebert said he would give him a check if Farnsworth would approve the bill. If Ebert had told Oswald that he was a partner, undoubtedly, that would have been sufficient to hold him responsible: Daniel v. Lance, 21 Pa. Superior Ct. 474; Fletcher Amer. Nat. Bank v. Wells, 282 Pa. 164. Whether he introduced himself as a partner, or permitted Farnsworth to represent him as such in his presence, is immaterial; an implied acquiescence to the declaration bound him.

In Kirk v. Hartman, 63 Pa. 97, Mr. Justice SHARS-
WOOD said, "Nothing certainly is more firmly estab-
lished than that if a man holds himself out, or know-
ingly suffers himself to be held out as a partner, on
the faith of which others trust or enter into contracts
with the firm, he is responsible whether he is in point
of fact interested as a partner or not."

The Partnership Act of March 26, 1915, P. L. 18, Sec.
16, provides: "When a person, by words spoken or
written or by conduct, represents himself, or consents
to another representing him to any one, as a partner
in an existing partnership or with one or more persons
not actual partners, he is liable to any such person to
whom such representation has been made, who has, on
the faith of such representation, given credit to the
actual or apparent partnership; and if he has made
such representation or consented to its being made in
a public manner he is liable to such person, whether the
representation has or has not been made or communi-
cated to such person so giving credit by or with the
knowledge of the apparent partner making the repre-
sentation or consenting to its being made." See also
Bing v. Schmitt, 226 Pa. 622.

Nor is it necessary to prove expressly that the plain-
tiff entered into the contract on the faith of Ebert's
having an interest in the partnership, as alleged by
the appellant; that reliance could have been reason-
ably inferred under the circumstances.

We agree with the learned court below that the
questions of partnership and whether the plaintiff gave
credit on the faith of Ebert's being a partner therein
were for the jury's determination.

The second question raises the admissibility of cer-
tain invoices as proof of the delivery of 2493 side locks
and 330 No. 5 end locks, for which the plaintiff claims
$192.66. The defense is, that all the locks delivered
were paid for. Farnsworth admitted, however, that
certain side locks were delivered, and when asked the

question if he knew whether or not they were paid for, he replied, "I do not." Shipping receipts for locks were produced, which Ebert acknowledged bore his signature. The appellant failed to include these receipts in the record before us and, therefore, we do not have the benefit of knowing which locks were embraced therein. Oswald, and Miss Gibson, the bookkeeper, both testified, without objection, that they knew locks had been delivered both at the Bourse, where samples had been formerly submitted, and at 2309 Marshall Street, where the defendants' plant was located.

It appears from the plaintiff's method of bookkeeping that when goods were delivered, an original and carbon copy of the shipping sheet were made and the purchaser was required to sign the carbon copy upon receipt of the articles, which was then returned to the plaintiff. A bill was then made up from the carbon copy billing sheet, which was sent to the purchaser, a carbon copy of the bill kept, and the amount, but not the items, entered in a sales book. It will be noted that the bills were made up *after* the carbon copy of the billing sheet had been returned showing an acknowledged receipt of the goods. The plaintiff produced the bookkeeper, who made all the entries, and offered in evidence carbon copies of the bills to prove the amount due. The court committed no error in considering that this evidence was sufficient to show delivery. It would hardly be expected that when a large number of small articles was delivered over a period of time, beginning in June and extending over into the following May, that shipping receipts should be produced in order to recover a claim five years after the transaction. The invoices are the permanent records of the transaction and if entries thereon were not made until the shipping receipts were in the bookkeeper's possession, they were the convenient, and, in our view, sufficiently reliable, evidence to be admissible. The

practical inconvenience, and ofttimes the impossibility, of producing loose shipping sheets to prove delivery of items in a voluminous account would in many instances prevent a recovery of a meritorious claim. If the original receipts showing delivery were essential proof to recovery, it would also be necessary to have the signatures thereto authenticated. The persons who receipted for the articles may be no longer in the employ of, or associated with, the purchaser and cannot be found, or numerous deliveries may have been made to a number of different persons, thus requiring the production of a score of employes to attend court and identify signatures attached to various billing sheets, all of which would interrupt work, prolong trials, and add materially to their expense. It would seem advisable in cases of this nature to give a wide latitude to the discretion of the trial judge respecting the admissibility of this character of evidence.

Wigmore, in his work on Evidence, Vol. 3, Sec. 1530, after discussing the question we are considering, reaches the conclusion that "where an entry is made by one person in the regular course of business recording an oral or written report made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry under the present exception, verified by the testimony of the former person only, provided the practical inconvenience of producing on the stand the numerous other persons thus concerned would in the particular case outweigh the probable utility of doing so."

This view seems to be in harmony with the trend of recent decisions in our own state. In the recent case of Knina v. Levine & Son, 86 Pa. Superior Ct. 92, Judge TREXLER, delivering the opinion of the court, said, "The strictness in regard to the admission of the records of memoranda made in the course of the business of large concerns has been greatly relaxed of late

from the fact that it would be impossible in many cases to prove plaintiff's case and the expense involved would be too great. The sales invoices appeared to have been made contemporaneously with the sales. The original record was offered, that is the leaves or sheets from the loose-leaf book. The only objection to their admission was that they were not the best evidence. In the case of William Zoller v. Hartford Fire Insurance Company, 272 Pa. 386, our Supreme Court took occasion to say that 'while the earlier rule denied the admissibility of books of account, in issues between third persons, the modern tendency is to widen the door to their admission. This grows out of the magnitude and complication of modern business......Their books are not alone the only evidence which is available to show delivery and condition when received, but in these days they are usually the best available evidence of such facts. As the law always seeks the best evidence, so, when new and more certain methods of ascertainment and proof arise, the law moving forward with and accommodating itself to the trade customs of the age it is serving, will make use of those means, which trade itself has developed, as an aid to certainty in recording transactions as they occur.' " See also Lowenstein v. Greenbaum, 65 Pa. Superior Ct. 19.

The appellant relies upon the doctrine laid down in Hall v. Wood, 187 Pa. 18, which was decided in 1898. In that case there was an attempt, by offering the book entries, to prove deliveries under special contract without in any way showing that the book entries were made from original delivery slips, duly receipted. The more modern decisions tend toward modification of the stricter rule of proof in order to conform in a practical way to the present day business methods. We all know that with the great enlargement and expansion of business enterprises there have been many changes in trade customs. What was a reasonable rule of evi-

dence to prove a transaction thirty years ago may be very unreasonable now. These changes must be recognized and the requirements of proof adapted and adjusted to meet modern mercantile and manufacturers' customs.

A careful consideration of the entire record leads us to the conclusion that the assignments of error are without merit.

Judgment is affirmed.